THIS OPINION IS CITABLE AS
PRECEDENT OF THE TTAB

Mailed:
March 31, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Genitope Corporation
_____

Serial No. 76470648
_____

J. Mitchell Jones of Medlen & Carroll, LLP for Genitope
Corporation.

Jill I. Prater, Trademark Examining Attorney, Law Office 115
(Tomas V. Vlcek, Managing Attorney).
_____

Before Seeherman, Quinn and Bucher, Administrative Trademark
Judges.

Opinion by Seeherman, Administrative Trademark Judge:


     Genitope Corporation has appealed from the final refusal

of the Trademark Examining Attorney to register the design

shown below (hereafter "fingerprint man") for

"biopharmaceutical preparations used to treat cancer in

humans, namely, individualized cancer treatments prepared

specifically for each individual patient from whom tumor tissue has been received."[1]



Registration has been refused pursuant to Trademark Rules 2.56 and 2.88 on the basis that the specimen submitted by applicant is not acceptable to show use of the mark on the identified goods because it is in the nature of advertising material.[2]

---

[1] Application Serial No. 76470648, filed November 29, 2002. The application was originally based on an asserted bona fide intention to use the mark; applicant subsequently filed a Statement of Use in which it asserted first use anywhere as of July 21, 2003, and first use in commerce as of September 9, 2003.

[2] The appeal brief was prepared by a different Examining Attorney from the one who had issued the Office actions. In the appeal brief the current Examining Attorney cited Section 1(a)(1)(C) of the Trademark Act as well as Trademark Rule 2.56 for this refusal. However, there is no such section of the Act. Section 1(a)(1) provides that the owner of a trademark may request registration by, inter alia, submitting specimens of the mark, and Section 1(a)(3)(C) provides that the verified statement in the application must specify that the mark is in use in commerce.

Applicant and the Examining Attorney have filed briefs.[3] Applicant did not request an oral hearing.

With its Statement of Use applicant submitted what it described as "Internet-based display featuring the mark as used in connection with the goods." The Examining Attorney found it to be unacceptable as evidence of actual trademark use "because it is merely a copy or representation of a design as used on a webpage," as well as being unacceptable because it is "in the nature of advertising and promotional material." Office action mailed March 12, 2004. Applicant then submitted a substitute specimen, consisting of "an Internet-based display." The issue on appeal is whether this substitute specimen is acceptable to show use of the mark in connection with the goods.[4]

Trademark Rule 2.56(b)(1) provides:

> A trademark specimen is a label, tag, or container for the goods, or a display associated with the goods. The Office may accept another document related to the goods or the sale of the goods when it is

---

[3] With her brief, the Examining Attorney has submitted additional materials which appear to be taken from applicant's website. Trademark Rule 2.142(d) provides that the record in an appeal should be complete as of the filing of the appeal. The additional documents submitted with the Examining Attorney's brief are manifestly untimely, and have not been considered.

[4] It is clear that applicant does not assert that its original specimen, filed with its Statement of Use, is acceptable. As applicant states in its brief, p. 1, "The present appeal involves a single issue: whether the substitute specimen filed September 3, 2004 is acceptable as evidence of actual trademark use."

> not possible to place the mark on the
> goods or packaging for the goods.

Trademark Rule 2.88(b)(2), applicable to this application because applicant filed its specimen with its Statement of Use, requires a specimen of the mark as actually used in commerce, and specifically refers to Rule 2.56 for the requirements for specimens.

Further, Section 45 of the Trademark Act states that a mark is deemed to be in use in commerce

> (1) on goods when—
>
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B) the goods are sold or transported in commerce.

Applicant asserts that its Internet webpage comprises a display associated with the goods, citing In re Dell, Inc., 71 USPQ2d 1725 (TTAB 2004). The Examining Attorney takes the position that the webpage does not meet the criteria set forth in Dell, and specifically that it does not provide a means for ordering the goods.

In order to determine whether applicant or the Examining Attorney is correct, we must turn to a consideration of the substitute specimen submitted by applicant, as shown below:

4

Ser No. 76470648





Dedicated to treating cancer one patient at a time™

Personalized Immunotherapy

## Product Overview - MyVax® Personalized Immunotherapy

Our lead product candidate, MyVax® Personalized Immunotherapy (previously referred to as GTOP-99), is an investigational treatment based on the unique genetic makeup of a patient's tumor and is designed to activate a patient's immune system to identify and attack cancer cells. As such, MyVax® Personalized Immunotherapy is commonly referred to as a patient-specific or personalized immunotherapy, an active idiotype immunotherapy, or a patient-specific or personalized cancer vaccine. This type of immunotherapy is intended to stimulate an active and durable immune response specifically against an individual patient's malignant cells. Each therapy is also tumor-specific, so that in theory, cells other than those of the tumor should not be affected. These are important differences compared to passive immunotherapies for non-Hodgkin's lymphoma (NHL), such as monoclonal antibodies that, while in circulation, target cell surface markers present on both malignant and non-malignant cells in every patient.

MyVax® Personalized Immunotherapy combines a protein derived from the patient's own tumor with an immunologic carrier protein and is administered with an immunologic adjuvant. The tumor-derived protein that is unique to each patient is the antibody expressed by the tumor cells. Each antibody has unique portions, collectively known as the idiotype, which can be recognized by the immune system. The antibody that is unique to a given patient's tumor is often referred to as the idiotype protein. Genitope's immunotherapy consists of the idiotype protein and a foreign carrier protein administered with an adjuvant to enhance the immune response.

Immunologic carrier proteins are themselves strong antigens and are used to increase the immunogenicity of the patient-specific idiotype. Adjuvants are molecules that attract and activate immune system cells at the site of immunization, which enhances the immune response. Currently, Genitope uses keyhole limpet hemocyanin, or (KLH), as a carrier protein for the idiotype protein and granulocyte macrophage-colony stimulating factor, or GM-CSF, as an adjuvant.

Active immunotherapies, similar to MyVax® Personalized Immunotherapy, for the treatment of NHL have been studied in clinical trials since the late 1980's. Results from these trials suggest that active immunotherapy may induce long-term remission and may improve survival of NHL patients. Despite these results, further development of this immunotherapeutic approach has been limited by manufacturing difficulties. We have developed a proprietary manufacturing process that overcomes many of these historical manufacturing limitations. MyVax® Personalized Immunotherapy is currently in a pivotal Phase 3 trial and additional Phase 2 trials for the treatment of B-cell non-Hodgkin's lymphoma.

For more information on personalized immunotherapy and our product, please see the Patient Backgrounder in the Patient Resources section of our website.

Copyright 2000-2004 Genitope Corporation. All Rights Reserved.
Privacy Statement | Terms & Conditions of Use

525 Penobscot Drive, Redwood City, CA 94063
(650) 482-2000  Fax (650) 482-2002  www.genitope.com

http://www.genitope.com/myvax.html

As the specimen shows, it consists of a single webpage which contains several paragraphs of a product overview for "My Vax Personalized Immunotherapy."  The last paragraph of the text states, "For more information on personalized immunotherapy and our product, please see the Patient Backgrounder in the Patient Resources section of our website."  The underlined phrases are links to other pages on applicant's website, although these linked pages have not been made of record.  The fingerprint man design appears next to "My Vax."  In the upper right hand corner is the statement "Phase 3 Clinical Trial Update:  Study Closed to Patient Registration" followed by "click here for more information."

Applicant, relying on Dell, argues that applicant's specimen is acceptable as a display associated with the goods.  In Dell, the Board held that "a website page which displays a product, and provides a means of ordering the product, can constitute a 'display associated with the goods,' as long as the mark appears on the webpage in a manner in which the mark is associated with the goods."  Id. at 1727.  In support of this conclusion, the Board pointed out that "[i]t is a well-recognized fact of current commercial life that many goods and services are offered for sale on-line, and that on-line sales make up a significant portion of trade."

6

The present fact situation differs from that in the Dell case because applicant's specimen webpage does not provide a means of ordering the product. On the contrary, the webpage states that the study is closed to patient registration. Certainly there is nothing in the specimen which shows that one can "click" on a link to order applicant's product, nor does it explain how to order it. Compare Lands' End Inc. v. Manbeck, 797 F.Supp. 511, 24 USPQ2d 1314, 1316 (E.D. Va. 1992), in which the Court found specimen catalogs to be acceptable displays associated with the goods because "a customer can identify a listing and make a decision to purchase by filling out the sales form and sending it in or by calling in a purchase by phone." At most, applicant's web page indicating how one can obtain "more information on personalized immunotherapy and our product" may be seen as promotional material, but advertising is not acceptable to show trademark use on goods. *See* Section 45 of the Trademark Act; In re MediaShare Corp., 43 USPQ2d 1304 (TTAB 1997). Similarly, the company name, address and phone number that appears at the end of the web page indicates only location information about applicant; it does not constitute a means to order goods through the mail or by telephone, in the way that a catalog sales form provides a means for one to fill out a sales form or call in a purchase by phone.

Applicant has explained that its goods are individualized cancer treatments and that, because of this, applicant's goods "are not amenable to the type of point-of-sale displays that allow direct ordering of the goods by the general public." Brief, p. 2.[5] If applicant is asserting that the nature of its product precludes it from creating a display associated with the goods that satisfies the requirements of the Trademark Act, as it has been interpreted by case law, then applicant may not be able to rely on a display associated with the goods as its evidence of trademark use, but rather would have to submit evidence of a different manner of use. Applicant's apparent recognition that its webpage does not comply with the requirements for a display associated with the goods only reinforces our own conclusion that it is not acceptable.

After considering the substitute specimen submitted by applicant, and the arguments of both applicant and the Examining Attorney, we find that applicant's specimen is not

---

[5] Applicant has also explained that because its goods are prepared specifically for each individual patient, they "are not packaged and displayed in a traditional manner." Brief, p. 2. We do not view this statement as an assertion that the nature of applicant's goods makes impractical traditional affixation of the mark to the goods. In any event, the Examining Attorney has pointed out that there does not appear to be any reason that applicant could not place its mark on the labels of its biopharmaceutical preparations, especially since the individualized treatment would most likely include a label showing the name of the person for which the pharmaceutical has been prepared.

a display associated with the goods, and therefore is not acceptable to show trademark use of applicant's mark.

Decision:  The refusal of registration is affirmed.